UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW D. WETZEL                                    CIVIL ACTION

VERSUS                                              NO. 09-7198

RODNEY "JACK" STRAIN, JR., ET AL.                   SECTION "D"(1)

# REPORT AND RECOMMENDATION

Plaintiff, Andrew D. Wetzel, a state pretrial detainee and frequent litigant in this Court,[1] filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. This time, he complains that his property was destroyed during a shakedown and that he was subjected to a retaliatory sexual assault. He named as defendants St. Tammany Parish Sheriff Rodney "Jack" Strain, Jr., Warden Gregory Longino, Deputy Smith, Deputy Lewis, and Corporal Lott.

A Spears hearing was held in this matter on January 20, 2010.[2] Based on the allegations in the amended complaint[3] and the Spears hearing testimony, the Court finds that plaintiff is making the following allegations in this lawsuit.

---

[1] For example, in 2009 alone, plaintiff filed at least *thirteen* federal lawsuits.

[2] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

[3] Rec. Doc. 5.

On October 11, 2009, Deputies Lewis and Smith conducted a routine shakedown of plaintiff's dorm. During the search of plaintiff's property, they located a folder containing documents. Plaintiff informed them that the documents related to his legal cases, and they told him that they would put back all of the documents. However, immediately after the search concluded, plaintiff examined the folder and found that some documents were missing. Among the missing documents were letters from co-defendants which plaintiff had intended to introduce at his criminal trial. Plaintiff stated that Corporal Lott supervised the dorm shakedown but was not personally involved in the search of plaintiff's property. Plaintiff complained to Lott regarding the missing documents; however, the documents were never returned.

Plaintiff also alleged that he was sexually assaulted by Deputy Lewis. Plaintiff explained that, on a later date, he and other inmates were searched by Lewis. During a follow-up search, Lewis performed on plaintiff an act called a "credit card swipe" in which he ran his hand up and down plaintiff's clothed buttocks. Plaintiff alleges that the act was in retaliation for an administrative grievance he filed against Lewis concerning the earlier shakedown.

At the <u>Spears</u> hearing, plaintiff explained that he sued Sheriff Strain and Warden Longino based on their supervisory positions and the fact that they formulate jail policies and procedures. He noted that they were not involved personally involved in dorm shakedown, the confiscation and presumed destruction of documents, or the alleged sexual assault.

<u>Standards of Review</u>

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

2

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).[4]

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those

---

[4] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint and his Spears hearing testimony,[5] the Court nevertheless finds that, for the following reasons, the complaint must be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

### Sheriff Rodney "Jack" Strain, Jr., and Warden Gregory Longino

Plaintiff lists Sheriff Strain and Warden Longino as defendants in this action. Plaintiff does not indicate whether those defendants are being sued in their official capacities, their individual

---

[5] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

4

capacities, or both. However, regardless of plaintiff's intent, it is evident that no claim has been properly stated against Strain or Longino in any capacity.

Plaintiff clearly has not stated a proper official-capacity claim against Sheriff Strain or Warden Longino. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, official-capacity claims against these defendants would in reality be claims against the local governmental entity they serve, i.e. the St. Tammany Parish Sheriff's Office. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his

constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom.

To the extent that plaintiff intended to state individual-capacity claims against Sheriff Strain and Warden Longino, he has again failed to state a proper claim. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no allegations whatsoever against Sheriff Strain or Warden Longino. Moreover, Sheriff Strain and Warden Longino cannot be held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

### Destruction of Property

Plaintiff's claim regarding the alleged destruction of his property could arguably be interpreted two ways. However, for the following reasons, it is evident that under neither interpretation has a nonfrivolous claim been stated.

At its most basic, plaintiff's claim could perhaps be construed merely as a property claim. If so construed, the claim simply is not actionable in federal court. In Hudson v. Palmer, 468 U.S. 517 (1984), the United States Supreme Court held that where a state actor, through his random and

unauthorized actions, intentionally deprives a prisoner of his property, there is no constitutional violation *if* the state provides an adequate postdeprivation remedy. Louisiana law clearly provides plaintiff with an adequate postdeprivation remedy for property loss, i.e. a tort suit brought in state court. Bennett v. Louisiana Department of Public Safety and Corrections, No. 02-30593, 2003 WL 1109690 (5th Cir. Feb. 19, 2003); Arnold v. Inmate Accounts, No. 02-30219, 2002 WL 31017153 (5th Cir. Aug. 20, 2002); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *7 (E.D. La. Oct. 16, 2008); Parker v. Strain, Civ. Action No. 06-9459, 2007 WL 38281, at *2 (E.D. La. Jan. 3, 2007). Accordingly, plaintiff may not pursue a property claim in this federal forum.

However, because plaintiff alleges that the property in question was "evidence" he intended to use at his criminal trial, the claim could perhaps be construed as one alleging that the defendants infringed upon plaintiff's right to due process in his criminal trial. However, when a state actor is accused of failing to preserve or destroying evidence in connection with a criminal proceeding, the arrested individual can establish a constitutional violation only if he is able to show that (1) the state actor acted in bad faith, (2) the evidence was material in showing the individual's innocence, and (3) the individual cannot demonstrate his innocence in alternate ways, such as by obtaining comparable evidence through other reasonably available means. See United States v. Thompson, 130 F.3d 676, 686 (5th Cir. 1997); see also United States v. Price, 298 Fed. App'x 931, 937 (11th Cir. 2008), cert. denied, 129 S.Ct. 2020 (2009); United States v. Mejia, 291 Fed. App'x 79, 81 (9th Cir. 2008); United States v. Ossai, 485 F.3d 25, 28 (1st Cir. 2007); United States v. LaVallee, 439 F.3d 670, 699 (10th Cir. 2006); United States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004); Smith

v. Readhead, Civ. Action No. 09-2553, 2009 WL 4723337, at *5 (E.D. La. Dec. 4, 2009). Moreover, the United States Supreme Court has explained:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, the evidence must ... possess an exculpatory value that was *apparent before the evidence was destroyed* ....

California v. Trombetta, 467 U.S. 479, 488-89 (1984) (emphasis added; citation and footnote omitted); see also Price, 298 Fed. App'x at 937; Allen v. Collins, No. 92-1477, 1993 WL 67167, at *4 (5th Cir. Mar. 4, 1993).

In the instant case, any such due process claim fails because plaintiff can establish neither that the documents in question possessed an exculpatory value that was apparent before they were allegedly destroyed nor that the officers acted in bad faith by destroying the documents. See United States v. Moore, 108 Fed. App'x 942, 943 (5th Cir. 2004). Even if the Court assumes that such documents were in fact taken and destroyed, an allegation supported by nothing more than plaintiff's bald allegations and clearly contested by prison officials,[6] plaintiff conceded at the Spears hearing that he did not inform the officers conducting the shakedown that the documents were exculpatory in nature or intended for his use at trial, and there is no evidence that the purportedly exculpatory nature of the documents would have been apparent to the officers upon cursory review during the dorm shakedown. Moreover, petitioner has no evidence whatsoever showing that the officers acted in bad faith during the shakedown. The Court notes that plaintiff was not specifically targeted in

---

[6] According to the jail records, the only item taken from plaintiff during the search was "an extra paper I.D." Rec. Doc. 5, Exhibits, pp. 1 and 4.

8

the shakedown; it was a routine shakedown of the entire dorm. Additionally, and more importantly, plaintiff indicates in his amended complaint that it was not even the officers who destroyed the documents; rather, he states that the officers merely threw the documents on the floor and that they were subsequently swept up by a jail trustee.[7]

Retaliatory Sexual Assault

As to plaintiff's claim that he was subjected to a retaliatory sexual assault, that claim is frivolous. There is no evidence whatsoever that the action was retaliatory, sexual in nature, or an assault.

The United States Fifth Circuit Court of Appeals has noted that retaliation claims must be "regarded with skepticism." See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted). Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, it is evident that plaintiff's retaliation claim implicates a specific constitutional right. Plaintiff essentially alleges that the retaliation was based on the fact that he complained about the Deputy Lewis's actions in the shakedown. "The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for

---

[7] Rec. Doc. 5, Exhibits, p. 7.

exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods, 60 F.3d at 1164.

That said, it is also evident that plaintiff cannot establish that Lewis's actions in the instant case were motivated by a desire to retaliate. To support a retaliation claim, a prisoner must be able to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred. Id. at 1166. In the instant case, plaintiff has no direct evidence of the Lewis's motivations. Further, as noted below, plaintiff is unable to show that an inherently suspect chronology of events exists to support his retaliation claim.

Although plaintiff filed an administrative complaint against Lewis, the Court cannot infer that the subsequent "sexual assault" was in any way connected to the filing of that complaint. As a preliminary matter, the Court notes that it is hardly an uncommon occurrence for prisoners to file administrative complaints, and there is no basis for concluding that plaintiff's complaint, which was rejected as unfounded and did not result in Lewis being disciplined, so enraged Lewis that it caused him to retaliate. Moreover, the reason for Lewis's subsequent action is readily apparent from the records plaintiff has provided. In a report filed by Lewis, he stated:

> I had worked a medical detail on 10/31/09. Upon arriving at Charlie two, I had patted down all inmates per policy and regulations. Upon taking the rest of the inmates to charlie one, C321 Wetzel, Andrew had ducked behind the feed up carts as not to be seen and proceeded to talk to a kitchen worker in close proximity. I having seen this, had no choice but to give C321 Wetzel, Andrew a second thorough pat down due to his behavior and lack of following a direct verbal order not to talk to kitchen workers.[8]

As a result, prison officials rejected plaintiff's related administrative complaint, noting:

---

[8] Rec. Doc. 5, Exhibits, p. 6.

> DY. Lewis was acting within the scope of his duties. A "credit card swipe" is used to check for the presence of contraband. Inmate Wetzel did not follow directions and was in close proximity to the feed up cart requiring DY. Lewis to conduct a second pat down search of contraband.[9]

Clearly, prison officials are permitted to conduct patdown searches, or even more highly intrusive searches, to guard against possession of contraband by inmates. See, e.g., Elliot v. Lynn, 38 F.3d 188, 191 (5th Cir. 1994) (noting that, under appropriate circumstances, even body cavity searches of inmates are constitutional). A prisoner cannot convert a unfounded challenge to such a facially valid action into a constitutional claim simply by adding a barebones allegation that the guard had a retaliatory motive. Rather, prisoners must allege an adequate factual basis for such a claim; and conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are not sufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints).

Out of an abundance of caution, the Court further notes that it rejects as patently frivolous plaintiff's characterization of the incident as a sexual assault. In the first place, it was a search, not an assault. In the second place, there is no evidence whatsoever that there was a sexual component to the search. Plaintiff was fully clothed and does not allege that there were any accompanying lewd comments or actions. Without more, a brief patdown search for contraband, even if it is of an inmate's clothed buttocks, cannot validly be interpreted as a sexual assault.

---

[9] Rec. Doc. 5, Exhibits, p. 5.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous and for otherwise failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[10]

New Orleans, Louisiana, this twenty-second day of January, 2010.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.